UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

JAMES VERMILYE and KATHERINE
VERMILYE,

**VERIFIED COMPLAINT and
JURY DEMAND**

Plaintiff,

-against-

UNITED STATES OF AMERICA,

Defendant.

-----------------------------------------------------------------X

Plaintiffs, **JAMES VERMILYE and KATHERINE VERMILYE** complaining of the

Defendant, by their attorneys, **LEVINE & GROSSMAN**, respectfully alleges and sets forth as

follows:

**INTRODUCTION**

1.     This is an action against the Defendant, United States of America under the Federal

Tort Claims Act, (28 U.S.C. §2671, et. seq.) and 28 U.S.C. §1346(b)(1), for gross negligence and

medical malpractice in connection with medical care provided to James Vermilye by the employees

LONG ISLAND FQHC, INC., 2201 Hempstead Turnpike, East Meadow, NY 11554.

2.     The claims herein are brought against the Defendant pursuant to the Federal Tort

Claims Act (28 U.S.C. §2671, et seq.) and 28 U.S.C. §1346 (b)(1) for money damages as

compensation for personal injuries and wrongful death caused by the Defendant's negligence.

3.     Plaintiff has fully complied with the provision of 28 U.S.C. §2675 of the Federal Tort

Claims Act (Standard Form 95 attached as Exhibit A).

1

4.      This suit has been timely filed, in that Plaintiff,   JAMES VERMILYE and KATHERINE VERMILYE  filed Standard Form 95 on October 10, 2019.  (see Exhibit A).

5.      On November 27, 2019 the Department of Health & Human Services requested additional information (See Exhibit B).

6.      On December 11, 2019, Plaintiffs provided the requested information.  (See Exhibit C).

7.      On or about December 9, 2020, Plaintiff received a Notice of Final Denial from the Department of Veterans Affairs, Office of the General Counsel.  (See Notice of Final Denial as Exhibit D).

## **PARTIES**

8.      Plaintiffs, JAMES VERMILYE and KATHERINE VERMILYE reside at 50 Merokee Place, Farmingdale, NY 11735 (Eastern District of New York).

9.      The Defendant, United States of America, through its agency with, the Long Island FQHC Inc., is located at 2201 Hempstead Turnpike, East Meadow, NY 11554.

10.      The Defendant, United States of America, through its agency with, the Long Island FQHC Inc.,/Elmont Family Health Center is located at 161 Hempstead Turnpike, Elmont, NY 11003.

11.      That at all times herein mentioned and upon information and belief, Long Island FQHC, Inc., was and still is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

12.     That at all times herein mentioned and upon information and belief, Long Island FQHC, Inc. was and still is a foreign corporation, duly licensed to do business in the State of New York.

13.     That at all times herein mentioned and upon information and belief, Long Island FQHC, Inc. was and still is a partnership or sole proprietorship duly licensed to do business in the State of New York.

14.     That at all times herein mentioned and upon information and belief, Long Island FQHC, Inc. was and still is a hospital corporation duly organized and existing under and by virtue of the laws of the State of New York.

15.     Defendant, United States of America, including its directors, officers, operators, administrators, employees, agents, and staff at the Long Island FQHC, Inc., are hereinafter collectively referred to as "Long Island FQHC, Inc."

16.     At all times hereinafter, the Long Island FQHC, Inc. operated a facility known as Long Island FQHC, Inc./Elmont Family Health Center, 161 Hempstead Turnpike, Elmont, NY 11003.

17.     At all times hereinafter, the Long Island FQHC, Inc./Elmont Family Health Center held itself out to the Plaintiff and eligible beneficiaries, as a provider of quality health care services, with the expertise necessary to maintaining the health and safety of patients like James Vermilye.

18.     At all times herein mentioned, Plaintiff JAMES VERMILYE , was a patient of the Long Island FQHC, Inc./Elmont Family Health Center., 161 Hempstead Turnpike, Elmont, NY 11003.

19.     That at all times herein mentioned and upon information and belief,  NASSAU HEALTH CARE CORPORATION  owned Long Island FQHC, Inc./Elmont Family Health Center, a medical care facility for the use, medical care and treatment of persons.

20.     That at all times herein mentioned and upon information and belief, NASSAU HEALTH CARE CORPORATION operated, managed, supervised and controlled Long Island FQHC, Inc./Elmont Family Health Center.

21.     That at all times herein mentioned and upon information and belief, NASSAU HEALTH CARE CORPORATION held out to the public, and in particular the Plaintiff herein, that they were operating said medical facility and/or hospital with skilled and competent physicians and medical assistants and personnel who would use reasonable and proper care in the treatment, operation and diagnosis of patients.

22.     That at all times herein mentioned and upon information and belief, NASSAU HEALTH CARE CORPORATION employed physicians and other medical personnel at Long Island FQHC, Inc./Elmont Family Health Center, 161 Hempstead Turnpike, Elmont, NY 11003.

23.     That at all times herein mentioned and upon information and belief, Long Island FQHC, Inc. employed physicians and other medical personnel at the aforesaid medical facility and/or hospital.

24.     Upon information and belief, NASSAU HEALTH CARE CORPORATION received HHS funding and Federal Public Health Service funding to operate a community health care center, to wit, Long Island FQHC, Inc./Elmont Family Health Center, 161 Hempstead Turnpike, Elmont, NY 11003

25.     Upon information and belief, Long Island FQHC, Inc. received HHS funding and Fedearl Public Health Service funding for to operate a community health care center, to wit, Long Island FQHC, Inc./Elmont Family Health Center, 161 Hempstead Turnpike, Elmont, NY 11003

26.     That at all times herein mentioned and upon information and belief, the Defendant held out to the public, and in particular the Plaintiff herein, that said agents, servants and/or employees and physicians associated with NASSAU HEALTH CARE CORPORATION would use reasonable, skillful and proper medical care in accordance with accepted medical standards, procedures and practices.

27.     That at all times herein mentioned and upon information and belief, Long Island FQHC, Inc. held out to the public, and in particular the Plaintiff herein, that said agents, servants and/or employees and physicians associated with would use reasonable, skillful and proper medical care in accordance with accepted medical standards, procedures and practices

28.     That at all times herein mentioned and upon information and belief, NASSAU HEALTH CARE CORPORATION owed their patients, and in particular the Plaintiff herein, the duty and standard of care which is normally exercised by such medical facilities and hospitals, their employees, servants, agents, nursing staff, doctors, x-ray technicians, etc., to wit, that they were competent, skillful and careful, and would act in accordance with accepted medical standards, procedures and practices in the State of New York.

29.     That at all times herein mentioned and upon information and belief, Long Island FQHC, Inc. owed their patients, and in particular the Plaintiff herein, the duty and standard of care which is normally exercised by such medical facilities and hospitals, their employees, servants, agents, nursing staff, doctors, x-ray technicians, etc., to wit, that they were competent, skillful and careful, and would act in accordance with accepted medical standards, procedures and practices in the State of New York.

## JURISDICTION

30.    Jurisdiction is proper under 28 U.S.C. §1346(b)(1).

## VENUE

31.    Venue is proper under 28 U.S.C. §1402(b) in that all of the acts and omission forming the basis of the claims occurred in the Eastern District of New York.

## FACTUAL ALLEGATIONS

32.    On or about April 10, 2018; April 11, 2018;  April 17, 2018 and continuing during a continuous course of treatment through and including April 20, 2018, the Plaintiff JAMES VERMILYE was treated at the Long Island FQHC, Inc.

33.    That on April 10, 2018, Plaintiff was treated by Christopher Gonzalez, M.D. at the Long Island FQHC, Inc./Elmont Family Health Center.

34.    That on April 11, 2018, Plaintiff was treated by Christopher Gonzalez, M.D. at the Long Island FQHC, Inc./Elmont Family Health Center.

35.    That on April 17, 2018, Plaintiff was treated by by Christopher Gonzalez, M.D., at the  Long Island FQHC, Inc./Elmont Family Health Center .

36.    That as a result of the treatment at Long Island FQHC, Inc./Elmont Family Health Center, Plaintiff was caused to be improperly treated.

## AS AND FOR A FIRST CAUSE OF ACTION- MEDICAL MALPRACTICE

37.    Plaintiff repeats, reiterates and re-alleges each and every allegation enumerated in those paragraphs of the complaint marked and designated "1." through "36." inclusive with the same force and effect as if hereinafter set forth at length. That Plaintiffs were a residents of the County of Nassau, State of New York at the time of the malpractice.

38.     At all times herein mentioned, Christopher Gonzalez, M.D. was a physician duly licensed to practice medicine in the State of New York.

39.     At all times herein mentioned, Christopher Gonzalez, M.D. was an employee of Nassau Health Care Corporation.

40.     At all times herein mentioned, Christopher Gonzalez, M.D. was an employee of Long Island FQHC, Inc.

41.     At all times herein mentioned, plaintiff, JAMES VERMILYE, was a patient of Christopher Gonzalez, M.D.

42.     As a result of the treatment provided by Chrisopher Gonzalez, M.D., the Long Island FQHC, Inc./Elmont Family Health Center was departed from the accepted standard of care: in failing to timely and properly diagnose patient's true condition; in delaying diagnosis of patient's true condition; in mis-diagnosing patient's true condition; in failing to timely and properly diagnose patient's heart attack; in delaying diagnosis of heart attack; in failing to timely and properly perform physical examination; in negligently and improperly performing a physical examination; in failing to connect a pulse oximeter to patient to determine oxygen saturation levels; in failing to timely and properly provide supplemental oxygen;

in failing to recognize significance of risk factors for heart attack including: history of smoking; history of insulin dependant diabetes; history of congestive heart failure; history of previous cardiac stents; history of previous lower extremity bypass/stenting;

in failing to timely and properly diagnose patient's true condition; in delaying diagnosis of patient's true condition; in mis-diagnosing patient's true condition; in failing to timely and properly diagnose patient's heart attack; in delaying diagnosis of patient's heart attack; in failing to timely and

properly perform physical examination; in negligently and improperly performing a physical examination; in failing to connect a pulse oximeter to patient to determine oxygen saturation levels; in failing to timely and properly provide supplemental oxygen;

in failing to recognize significance of risk factors for heart attack including: history of smoking; history of insulin dependant diabetes; history of hypertension; history of coronary artery disease; history of congestive heart failure; history of previous cardiac stents; history of previous lower extremity bypass/stenting;

in failing to timely and properly recognize the significance of, determine the etiology of and act upon the patient's signs, symptoms and complaints; in failing to timely and properly recognize the significance of, determine the etiology of and act upon the patient's signs, symptoms and complaints on or about April 10, 2018 at the Elmont Family Health Center, 161 Hempstead Tpke., Elmont, NY 11003; in failing to timely and properly recognize the significance of, determine the etiology of and act upon the patient's signs, symptoms and complaints on or about April 17, 2018 at the Elmont Family Health Center, 161 Hempstead Tpke., Elmont, NY 11003;

in failing to timely and properly recognize the significance of, determine the etiology of patient's complaint of "something feels off" on April 10, 2018;   in failing to timely and properly recognize the significance of, determine the etiology of patient's low blood pressure/hypotension April 10, 2018;

in failing to timely and properly recognize the significance of, determine the etiology of patient's abnormal EKG on April 10, 2018; in failing to consider a cardiac event as the cause of patient's abnormal EKG on April 10, 2018; in negligently and improperly believing that patient's abnormal EKG on April 10, 2018 was caused by respiratory infection; in negligently and improperly

8

believing that patient's abnormal EKG on April 10, 2018 was caused by alleged non-compliance to medication or diet; in failing to timely and properly consider that patient's abnormal EKG was caused by a cardiac condition;

in failing to timely and properly recommend and/or order patient to go to emergency room on April 10, 2018; in failing to timely and properly call 911 and/or EMS for transfer to hospital on April 10, 2018;

in failing to timely order and/or perform laboratory tests and/or studies on April 10, 2018; and April 17, 2018; in failing to timely and properly order and/or perform cardiac enzymes and/or cardiac biomarkers; in failing to timely and properly order and/or perform Myoglobin; in failing to timely and properly order and/or perform Troponin I; in failing to timely and properly order and/or perform Troponin T; in failing to timely and properly order and/or perform serial Troponin I and/or Troponin T studies; in failing to timely and properly order and/or perform Creatine Kinase (CK); in failing to timely and properly order and/or perform Creatine Phosphokinase (CPK); in failing to timely and properly order and/or perform Brain natriuretic peptide test (BNP); in failing to timely and properly order and/or perform N-terminal pro b-type natriuretic peptide (NT-proBNP);

in failing to timely order and/or perform diagnostic tests and/or studies on April 10, 2018; and April 17, 2018; in failing to monitor patient's oxygen saturation levels; in failing to timely and properly order and/or perform EKG; in negligently and improperly reading and/or interpreting EKG; in failing to timely and properly order and/or perform serial EKG; in failing to identify abnormalities with EKG studies;

in failing to timely and properly order and/or perform chest x-ray; in failing to timely and properly order and/or perform cardiac stress test; in failing to timely and properly order and/or

perform echocardiogram; in failing to timely and properly order and/or perform coronary angiography and/or cardiac catheterization; in failing to timely and properly order and/or perform cardiac CT; in failing to timely and properly order and/or perform cardiac MRI;

in failing to timely and properly recognize the significance of, determine the etiology of patient's suspected pneumonia; in failing to timely and properly treat pneumonia; in failing to timely and properly recommend and/or order and/or obtain appropriate consultations on April 10, 2018; and April 17, 2018; in failing to timely and properly recommend and/or order and/or obtain cardiology consultation; in failing to timely and properly recommend and/or order and/or obtain interventional cardiology consultation;

in failing to timely and properly entertain and/or formulate a differential diagnosis; in negligently and improperly entertaining and/or formulating a differential diagnosis; in failing to timely and properly identify medical conditions consistent with patient's condition; in negligently and improperly identifying medical conditions inconsistent with patient's condition; in failing to timely and properly rule out potential diagnoses; in negligently and improperly ruling out potential diagnosis', in failing to timely and properly assign priority to those most emergent conditions; in negligently and improperly assigning priorities to those most emergent conditions;  in failing to timely and properly obtain patient's complaints; in negligently and improperly obtaining patient's complaints; in failing to timely and properly obtaining and/or documenting patient's signs and symptoms; in negligently and improperly obtaining and documenting patient's signs and symptoms; in failing to timely and properly obtain and record patients past medical history; in negligently and improperly obtaining and recording patient's past medical history; in failing to timely and properly consider every reasonable cause of sign and symptom; in failing to timely and properly rule out all possibilities by diagnostic and/or radiological; in failing to timely and properly treat those diagnosis'

10

which were not ruled out; in negligently and improperly treating those diagnosis' which were not ruled out; in failing to timely and properly formulate differential diagnosis that included heart attack; in failing to consider that patient's previously placed cardiac stent had migrated; in ruling out heart attack as the etiology of patient's signs and symptoms;

in failing to timely and properly order appropriate medical management; in failing to timely and properly order and/or administer blood thinners; in failing to timely and properly order and/or administer thrombolysis; in negligently and improperly ordering and/or administering contraindicated medications;

in failing to call EMS and/or 911 on April 10, 2018 and April 17, 2018; in failing to timely and properly refer patient to emergency department; in failing to timely and properly refer for cardiac catheterization; in failing to recommend and/or refer and/or order appropriate specialists; in failing to timely and properly consult with cardiologist and/or interventional cardiologists; in causing a delay in patient having cardiac catheterization; in causing a delay in patient having percutaneous intervention; in causing a delay in patient being revascularized,

43.     Said occurrence was due to the carelessness and negligence of the Defendant, its agents, servants and employees in failing to treat Plaintiff in the accepted and proper medical manner, all without any fault or lack of care on the part of Plaintiff's decedent herein.

44.     As a direct and proximate result of the aforementioned carelessness and negligence of the Defendant herein, Plaintiff suffered and sustained severe injuries and was caused to suffer and sustain great physical and mental pain and severe nervous shock, which conditions were all of a permanent and lasting nature.

45.     The acts and/or omissions set forth above constitute a valid claim under the Laws of

11

the State of New York.

46. The amount of damages sought exceeds the jurisdiction limits of $75,000.00.

47. The Defendant is liable pursuant to 28 U.S.C. §1346(b)(1).

## AS AND FOR A SECOND CAUSE OF ACTION - NEGLIGENCE

48. Plaintiff repeats, reiterates and re-alleges each and every allegation enumerated in those paragraphs of the complaint marked and designated "1." through "47." inclusive with the same force and effect as if hereinafter set forth at length.

49. At all times herein mentioned, Christopher Gonzalez, M.D. was a physician duly licensed to practice medicine in the State of New York.

50. At all times herein mentioned, Christopher Gonzalez, M.D. was an employee of Nassau Health Care Corporation.

51. At all times herein mentioned, Christopher Gonzalez, M.D. was an employee of Long Island FQHC, Inc.

52. At all times herein mentioned, plaintiff, JAMES VERMILYE, was a patient of Christopher Gonzalez, M.D.

53. As a result of the treatment provided by Chrisopher Gonzalez, M.D., the Long Island FQHC, Inc./Elmont Family Health Center was negligent: failing to timely and properly diagnose patient's true condition; in delaying diagnosis of patient's true condition; in mis-diagnosing patient's true condition; in failing to timely and properly diagnose patient's heart attack; in delaying diagnosis of heart attack; in failing to timely and properly perform physical examination; in negligently and improperly performing a physical examination; in failing to connect a pulse oximeter to patient to determine oxygen saturation levels; in failing to timely and properly provide supplemental oxygen;

in failing to recognize significance of risk factors for heart attack including: history of smoking; history of insulin dependant diabetes; history of congestive heart failure; history of previous cardiac stents; history of previous lower extremity bypass/stenting;

in failing to timely and properly diagnose patient's true condition; in delaying diagnosis of patient's true condition; in mis-diagnosing patient's true condition; in failing to timely and properly diagnose patient's heart attack; in delaying diagnosis of patient's heart attack; in failing to timely and properly perform physical examination; in negligently and improperly performing a physical examination; in failing to connect a pulse oximeter to patient to determine oxygen saturation levels; in failing to timely and properly provide supplemental oxygen;

in failing to recognize significance of risk factors for heart attack including: history of smoking; history of insulin dependant diabetes; history of hypertension;  history of coronary artery disease;  history of congestive heart failure;  history of previous cardiac stents; history of previous lower extremity bypass/stenting;

in failing to timely and properly recognize the significance of, determine the etiology of and act upon the patient's signs, symptoms and complaints; in failing to timely and properly recognize the significance of, determine the etiology of and act upon the patient's signs, symptoms and complaints on or about April 10, 2018 at the Elmont Family Health Center, 161 Hempstead Tpke., Elmont, NY 11003; in failing to timely and properly recognize the significance of, determine the etiology of and act upon the patient's signs, symptoms and complaints on or about April 17, 2018 at the Elmont Family Health Center, 161 Hempstead Tpke., Elmont, NY 11003;

in failing to timely and properly recognize the significance of, determine the etiology of patient's complaint of "something feels off" on April 10, 2018;   in failing to timely and properly

13

recognize the significance of, determine the etiology of patient's low blood pressure/hypotension April 10, 2018;

in failing to timely and properly recognize the significance of, determine the etiology of patient's abnormal EKG on April 10, 2018; in failing to consider a cardiac event as the cause of patient's abnormal EKG on April 10, 2018; in negligently and improperly believing that patient's abnormal EKG on April 10, 2018 was caused by respiratory infection; in negligently and improperly believing that patient's abnormal EKG on April 10, 2018 was caused by alleged non-compliance to medication or diet; in failing to timely and properly consider that patient's abnormal EKG was caused by a cardiac condition;

in failing to timely and properly recommend and/or order patient to go to emergency room on April 10, 2018; in failing to timely and properly call 911 and/or EMS for transfer to hospital on April 10, 2018;

in failing to timely order and/or perform laboratory tests and/or studies on April 10, 2018; and April 17, 2018; in failing to timely and properly order and/or perform cardiac enzymes and/or cardiac biomarkers; in failing to timely and properly order and/or perform Myoglobin; in failing to timely and properly order and/or perform Troponin I; in failing to timely and properly order and/or perform Troponin T; in failing to timely and properly order and/or perform serial Troponin I and/or Troponin T studies; in failing to timely and properly order and/or perform Creatine Kinase (CK); in failing to timely and properly order and/or perform Creatine Phosphokinase (CPK); in failing to timely and properly order and/or perform Brain natriuretic peptide test (BNP); in failing to timely and properly order and/or perform N-terminal pro b-type natriuretic peptide (NT-proBNP);

in failing to timely order and/or perform diagnostic tests and/or studies on April 10, 2018;

14

and April 17, 2018; in failing to monitor patient's oxygen saturation levels; in failing to timely and properly order and/or perform EKG; in negligently and improperly reading and/or interpreting EKG; in failing to timely and properly order and/or perform serial EKG; in failing to identify abnormalities with EKG studies;

in failing to timely and properly order and/or perform chest x-ray; in failing to timely and properly order and/or perform cardiac stress test; in failing to timely and properly order and/or perform echocardiogram; in failing to timely and properly order and/or perform coronary angiography and/or cardiac catheterization; in failing to timely and properly order and/or perform cardiac CT; in failing to timely and properly order and/or perform cardiac MRI;

in failing to timely and properly recognize the significance of, determine the etiology of patient's suspected pneumonia; in failing to timely and properly treat pneumonia; in failing to timely and properly recommend and/or order and/or obtain appropriate consultations on April 10, 2018; and April 17, 2018; in failing to timely and properly recommend and/or order and/or obtain cardiology consultation; in failing to timely and properly recommend and/or order and/or obtain interventional cardiology consultation;

in failing to timely and properly entertain and/or formulate a differential diagnosis; in negligently and improperly entertaining and/or formulating a differential diagnosis; in failing to timely and properly identify medical conditions consistent with patient's condition; in negligently and improperly identifying medical conditions inconsistent with patient's condition; in failing to timely and properly rule out potential diagnoses; in negligently and improperly ruling out potential diagnosis', in failing to timely and properly assign priority to those most emergent conditions; in negligently and improperly assigning priorities to those most emergent conditions;  in failing to timely and properly obtain patient's complaints; in negligently and improperly obtaining patient's

15

complaints; in failing to timely and properly obtaining and/or documenting patient's signs and symptoms; in negligently and improperly obtaining and documenting patient's signs and symptoms; in failing to timely and properly obtain and record patients past medical history; in negligently and improperly obtaining and recording patient's past medical history; in failing to timely and properly consider every reasonable cause of sign and symptom; in failing to timely and properly rule out all possibilities by diagnostic and/or radiological; in failing to timely and properly treat those diagnosis' which were not ruled out; in negligently and improperly treating those diagnosis' which were not ruled out; in failing to timely and properly formulate differential diagnosis that included heart attack; in failing to consider that patient's previously placed cardiac stent had migrated; in ruling out heart attack as the etiology of patient's signs and symptoms;

in failing to timely and properly order appropriate medical management; in failing to timely and properly order and/or administer blood thinners; in failing to timely and properly order and/or administer thrombolysis; in negligently and improperly ordering and/or administering contraindicated medications;

in failing to call EMS and/or 911 on April 10, 2018 and April 17, 2018; in failing to timely and properly refer patient to emergency department; in failing to timely and properly refer for cardiac catheterization; in failing to recommend and/or refer and/or order appropriate specialists; in failing to timely and properly consult with cardiologist and/or interventional cardiologists; in causing a delay in patient having cardiac catheterization; in causing a delay in patient having percutaneous intervention; in causing a delay in patient being revascularized.

54.     Said occurrence was due to the carelessness and negligence of the Defendant, its agents, servants and employees in failing to treat Plaintiff in the accepted and proper medical manner, all without any fault or lack of care on the part of Plaintiff's decedent herein.

16

55.    As a direct and proximate result of the aforementioned carelessness and negligence of the Defendant herein, Plaintiff suffered and sustained severe injuries and was caused to suffer and sustain great physical and mental pain and severe nervous shock, which conditions were all of a permanent and lasting nature.

56.    The acts and/or omissions set forth above constitute a valid claim under the Laws of the State of New York.

57.    The amount of damages sought exceeds the jurisdiction limits of $75,000.00.

58.    The Defendant is liable pursuant to 28 U.S.C. §1346(b)(1).

## AS AND FOR A THIRD CAUSE OF ACTION-
## LOSS OF SERVICES

59.    Plaintiff repeats, reiterates and re-alleges each and every allegation enumerated in those paragraphs of the complaint marked and designated "1." through "66" inclusive with the same force and effect as if hereinafter set forth at length.

60.    By reason of the foregoing occurrence and resultant injuries, plaintiff KATHERINE VERMILYE was deprived of the services and companionship of her husband, JAMES VERMILYE, and was caused to become obliged to expend sums of money for medical and hospital care on his behalf.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, JAMES VERMILYE and KATHERINE VERMILYE prays that judgment be entered in her favor against the Defendant as follows:

a.    $2,000,000.00 (TWO MILLION DOLLARS) for the First Cause of Action - Medical Malpractice;

b.    $2,000,000.00 (TWO MILLION DOLLARS) for the Second Cause of Action - Negligence;

c.   $200,000.00 (TWO HUNDRED THOUSAND DOLLARS) for the THIRD

Cause of Action - Loss of Services;

d.   Costs and attorneys fees to be determined, together with such further and

additional relief that this Court may deem proper.

Yours, etc.,
LEVINE & GROSSMAN

By: _____
SCOTT D. RUBIN (SDR-9765)
Attorneys for Plaintiff
JAMES VERMILYE and KATHERINE VERMILYE
114 Old Country Road
Mineola, New York 11501
(516) 248-7575

## CERTIFICATION

I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

BY: _____
SCOTT D. RUBIN